THE COUNTY COMMISSIONERS OF FREDERICK COUNTY *vs.* THE SISTERS OF CHARITY OF SAINT JOSEPH.

*Charitable or benevolent Institutions—Property not Exempt from Taxation under sec. 2 of the Act of 1876, ch. 260— Basis of Assessment—In ascertaining the objects of Exemption under sec. 2 of the Act of 1876, ch. 260, no Latitude of Construction to be allowed—Surrender of the Right of Taxation never to be presumed—Exemption from Taxation not to be presumed—Exemption a special privilege.*

The appellees, chartered by the Act of 1816, ch. 95, claimed exemption from assessment and taxation for its property under the provisions of the second section of the Act of 1876, ch. 260, as being an institution erected and conducted as an hospital, asylum, charitable and benevolent institution, for the care of the sick, the succor of aged, infirm and necessitous persons, and the education of young females, many of them free of charge. It was insisted on the part of the appellees that the income derived from the paying scholars, after defraying expenses, was all consumed in sustaining the benevolent objects of the institution, and the school was but a means to that end. HELD :

1st. That all the property of the appellees, real and personal, used and occupied in the maintenance and conduct of an academy or school for the education of young females, so far as it was a source of revenue to the appellees, was a proper object for assessment, notwithstanding the same buildings or property might be partially used for hospital purposes or religious worship.

2nd. That if the property were indivisible so that the value of the several parts could not be ascertained, the amount of the net income from the academy or school might be capitalized as the basis of assessment.

County Comm'rs of Frederick Co. *vs.* Sisters of Charity of St. Joseph.

The extremely guarded language employed in section 2 of the Act of 1876, ch 260, in describing the property to be exempted, *e. g.* "buildings used exclusively for public worship," "hospitals so far as used for the benefit of the indigent and afflicted," "and the ground which the buildings used as such shall actually cover," indicates that no latitude of construction was to be allowed in ascertaining the objects of exemption.

Nothing is more conclusively established, as well by the decisions of the Supreme Court of the United States as by those of this State and of other judicial tribunals, than that the right of taxation is never to be presumed to be surrendered by the sovereign power, and that such surrender is never made unless it be the result of express terms or necessary inference.

Exemption being a surrender of the power of taxation in favor of particular persons or property, is subject to the same principle, and, therefore, never to be presumed.

Exemption is a special privilege, in conflict with a universal obligation, conferred only by positive law, and not founded in the character of the person or property, except in a few specified cases; and no general principle can be found in the Constitution or laws of the State, which releases charitable or benevolent corporations from the universal obligation to contribute to the support of the government in proportion to their actual worth in real or personal property. ·

APPEAL from the Circuit Court for Frederick County.

This is an appeal from an order of the Court below, passed on the 23rd of May, 1877, upon the petition of the Sisters of Charity of St. Joseph, determining that certain property of said corporation, situated in Frederick County, was not subject to assessment and valuation, and directing the County Commissioners of said County to strike the same from the list of property valued to said corporation. The case is further stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., BOWIE, STEWART, MILLER, ALVEY and ROBINSON, J.

*Charles J. M. Gwinn, Attorney General,* for the appellants.

*Charles W. Ross* and *James McSherry,* for the appellees.

BOWIE, J., delivered the opinion of the Court.

The Sisters of Charity of St. Joseph (the appellees in this case,) by their petition filed in the Circuit Court for Frederick County, allege, that they were incorporated by an Act of the General Assembly of Maryland, being chapter 95 of 1816, for the purpose of promoting " works of piety, charity and usefulness, and especially for the care of the sick, the succor of aged, infirm, and necessitous persons, and *the education of young females.*"

For these objects and ends, they allege, they were authorized and empowered by their charter, to take and hold in fee-simple or otherwise, the farm in Frederick County, on which they now dwell, and any other real estate, and any personal or mixed estate or property, " provided always, that they shall not at any time hold, etc., by legal seizure or trust, for their benefit, more than eight hundred acres of land, nor shall their personal estate at any time exceed in value, the sum of fifty thousand dollars."

The petitioners further charge, that under the provisions of their charter, they are seized in fee of a farm containing three hundred and ninety-eight acres, lying in said county, with its improvements, and of personal property, consisting of live stock, furniture, and other personal estate.

They allege, that the improvements on the lands, consist of buildings, *used for the purpose* of educating young females, *many of whom are educated free of charge,* and also, as an asylum and hospital, for the aged and infirm nuns of the order of the Sisters of Charity of St. Joseph, and also, of a chapel used as a place of worship by the inmates of Saint Joseph ; and that the entire buildings are used for charitable and benevolent purposes of said order of the Sisters of Charity of Saint Joseph.

They charge that the assessors appointed under the provisions of the Act of 1876, ch. 260, for the assessment district of Frederick County where the said institution is located, have assessed their real property, including improvements at $79,600, and their personal property at $13,135.

They allege that the house or building, among said improvements valued and assessed for taxation, used for public worship, and the furniture contained therein, and the ground actually covered by it are exempt from assessment, valuation and taxation, and all the buildings (amongst said improvements) used as hospitals, asylums, charitable or benevolent institutions, and the ground which they actually cover, and all the furniture and equipments owned by said corporation, are exempt from valuation and taxation, etc.

Wherefore they prayed an order requiring the County Commissioners of Frederick County, to appear and answer said petition, and show cause why said assessment and valuation of the improvements, furniture and equipments, etc., should not be stricken from the assessment lists of taxable property in said county.

The Commissioners by their answer, deny that the buildings assessed in the name of the petitioners are used by them for the purpose of educating young females *free of charge,* and as an asylum and hospital for the aged and infirm nuns of the order of the Sisters of Charity of St. Joseph, and that the *entire* buildings are used for charitable and benevolent purposes of said order. They admit that there is a chapel, among said improvements, used as a place of worship, but aver that it has not been included in said assessment.

They say, that there may be improvements on said farm, used for charitable and benevolent purposes, as hospitals, and asylums, etc., and in which young females may be educated free of charge, but these are not assessed.

They specially aver, that the improvements, the assessment of which is complained of, are not used as hospitals or asylums, charitable or benevolent institutions, for the benefit of the indigent and afflicted, in manner required by law to exempt them from taxation.

Testimony being taken in support of the allegations of the petition, and answer, under a commission duly issued, executed and returned, the cause was submitted. The Court below ordered that the County Commissioners of Frederick County, strike from the list of property valued to said Sisters of Charity of Saint Joseph, the property described in said list as

Improvements valued at.....................$67,660
Live stock and furniture.......................13,135
Carriages, etc...................................515
Farm implements..................................457
Sundries,..........................................108

From which order, the respondents appealed.

The appellants concede, that the appellees come within the class of charitable and benevolent institutions.

That the buildings used exclusively for public worship and the furniture contained therein; buildings belonging to them, together with their furniture and equipments, so far as actually used for the benefit of the indigent and afflicted, and the grounds they shall cover, are exempt, but these exemptions are limited to the property *primarily used for the benefit of the indigent and afflicted*, and they protect from taxation, only so much of that property as is primarily used for these charitable purposes. It is contended, that the property directed to be stricken from the tax lists, was neither wholly subject to, nor wholly exempt from, taxation; *it was used not only for the benefit of the indigent and afflicted, but also as a means of subsisting scholars who paid for their board and tuition.*

The evidence shows that among other improvements, there are one or more buildings used for academic purposes,

in which there are seventy-two paying scholars, at the rate of $250 per annum.

This income, it is insisted on the part of the appellees, after defraying expenses, is all consumed in sustaining the benevolent objects of the institution, and the school is but a means to that end.

Under these circumstances, the question arises, what part of the property of the appellees, if any, is subject to assessment, under the Act of 1876, ch. 260?

The Declaration of Rights asserts as a fundamental maxim of government, that every person in the State, or person holding property therein, ought to contribute his proportion of public taxes for the support of the Government, according to his actual worth in real or personal property. *15th Art. of Dec. of Rights.*

In pursuance of this policy, the Act of 1876, ch. 260, entitled "An Act for the general valuation and assessment of property in this State," in its first section, after enumerating the several kinds of property to be assessed, concludes with the emphatic injunction, "and all property of every kind, nature, and description, within this State, shall be liable to valuation, assessment, and taxation, except as provided in the next ensuing section of this Act."

The second section of the Act of 1876, ch. 260, enumerating the kinds of property to be exempted, specifies, "Houses or buildings used exclusively for public worship, and the furniture contained therein, and the ground which said houses or buildings so exclusively used for public worship *shall actually cover*. * * * * *

"Hospitals, or asylums, charitable, or benevolent institutions, *so far as used for the benefit of the indigent and afflicted*, and the ground which the buildings used as such hospitals, asylums, charitable or benevolent institutions, shall *actually cover*, and the equipments owned by such corporations or institutions," concluding the classification of exemptions, with the imperative sentence, "all other

property in this State, of every kind, nature and description whatever, shall be liable to valuation, assessment, and taxation."

The extremely guarded language used in describing the property to be exempted, *e. g.,* "*buildings exclusively used for public worship,*" "*hospitals so far as used for the benefit of the indigent and afflicted,*" "*ground actually covered by them,*" indicates that no latitude of construction was to be allowed in ascertaining the objects of exemption.

One of the distinct purposes of the incorporation of the appellees, as appears from the terms of their charter, was the education of young females. This is a secular employment, and often a profitable and remunerative one, and so much of the property of the appellees, as was appropriated to this purpose for revenue, was liable to assessment.

One of the fundamental rules of construction of legislative Acts relating to taxation is, that "nothing is more conclusively established, as well by the decisions of the Supreme Court of the United States as by those of Maryland and of other judicial tribunals, than that the right of taxation is never to be presumed to be surrendered by the sovereign power, and that such surrender is never made, unless it be the result of express terms or necessary inference." 6 *Gill,* 290 ; *Cooley on Taxation,* 146.

Exemption being a surrender of the power of taxation in favor of particular persons or property, is subject to the same principle and therefore never to be presumed. "All exemptions are to be strictly construed, they embrace only what is within their terms." *Ibid.*

It is a special privilege, in conflict with a universal obligation, conferred only by positive law, and not founded in the character of the person or property, except in a few specified cases.

Highly as we venerate the self-devotion and pious zeal of the noble women who have dedicated themselves and

their property, mainly to works of charity, we cannot find in our Constitution or laws any general principle which releases such corporations from the universal obligation to contribute to the support of the government in proportion to their actual worth in real or personal property.

It may be said such institutions are discharging one of the great functions of government in providing for and protecting the indigent and afflicted; yet, under our political system, religious houses or corporations, as such, are not exempt from taxation; their churches, hospitals and asylums are exempt by positive law, but their educational institutions (unless they are clearly eleemosynary) are not included in the list of exemptions. The same rule of construction as to similar clauses of exemption seems to have been adopted in other States.

The liability to taxation of property appropriated partly to worship, and partly to secular purposes, is shown by the case of *The Proprietors of the Meeting House in Lowell vs. The City of Lowell,* 1 *Met. R.*, 541. The Revised Statutes of Massachusetts exempted from taxation "all houses of religious worship, and the pews and furniture within the same."

The plaintiffs were incorporated for the purpose of purchasing a site for a meeting house and erecting one. They erected a building, the upper story of which was divided into pews, and furnished for religious purposes, the lower story was fitted up as stores.

Ch. J. SHAW, delivering the opinion of the Court, said: "such being the nature of the property, the exemption of the statute extended only to that part of the property which was used as a place of worship and for purposes connected therewith. The income raised from the tenements (the stores) goes as directly to the use of the proprietors, by paying their debts, as if they made annual dividends." *Ibid.*

So the receipts from the academical department in this case constitute a part of the general revenue of the Society

of St. Joseph, and must be applicable first to the payment of their expenses, etc. ; the application of the surplus revenue to charitable uses, does not, in our opinion, entitle the property from which it accrues to exemption

In the case of the *State vs. Ross*, where the property exempted was described "as all colleges, academies or seminaries of learning, and all buildings erected and used for religious purposes, and the lands whereon they were erected," etc., it was held that a tract of land, owned by "the Trustees of the College of New Jersey, containing thirteen acres on which was a private grammar school, kept by a tenant of the Trustees, was not exempt, although it was a part of the real estate of the college." 4 *Zab. Rep.*, 498.

The Revised Statutes of Massachusetts, chapter 7, section 5, exempted "the personal property of all literary, benevolent, charitable and scientific institutions incorporated within the commonwealth, and such real estate belonging to such institutions as shall be actually used by them, or by the officers of such institutions, for the purposes for which they were incorporated," etc.

The President and Fellows of Harvard College built a dwelling house on land of the corporation, within the college yard, and leased it to one of their professors, to be occupied by him as a residence at an annual rent.

The Court held that the question whether the lessee was an officer or not was not material, his interest in the lease was subject to taxation—that it never was the intention of the Legislature to exempt from taxation all the dwelling houses that might be built and leased to the officers, professors and instructors.

The case of the *Wesleyan Academy vs. Inhabitants of Wilbraham*, 99 *Mass.*, 599, does not conflict with any of the preceding cases.

That was the case of a farm and stock owned by an institution incorporated for the purposes of education, and

County Comm'rs of Frederick Co. *vs.* Sisters of Charity of St. Joseph.

by it worked, solely to raise produce and to do team work for a boarding house kept by the Institution to furnish board to the students at its actual cost.

This was an instance in which the property was directly used and appropriated by the corporation for the purposes to which it was dedicated, and within the interest and meaning of the exempting clause of the statute. These decisions show the jealous care with which the Court guard the exercise of the power of taxation, with a view to prevent the extension of the claims to exemption.

The conclusion to be drawn from these premises is, that all the property of the appellees, real and personal, used and occupied in the maintenance and conduct of an academy or school for the education of young females, so far as it is a source of revenue to the appellees, is a proper object for assessment, notwithstanding the same buildings or property may be partially used for hospital purposes or religious worship.

If the property is indivisible, so that the value of the several parts cannot be ascertained, the amount of the net income from the academy or school may be capitalized as the basis of assessment.

*Order reversed, and*
*cause remanded.*

(Decided 6th February, 1878.)