THE APPEAL TAX COURT OF BALTIMORE CITY *vs.* ST. PETER'S ACADEMY. SAME *vs.* ST. ALPHONSUS' HALL. SAME *vs.* ST. LAWRENCE'S CHURCH. SAME *vs.* ST. MARY'S SEMINARY. SAME *vs.* ROCK HILL COLLEGE. SAME *vs.* THE TRUSTEES OF THE CATHOLIC CATHEDRAL CHURCH OF BALTIMORE. SAME *vs.* SAME. SAME *vs.* THE GENERAL WORKINGMEN'S SICK RELIEF UNION OF BALTIMORE CITY. SAME *vs.* THE RED MEN'S HALL OF BALTIMORE. SAME *vs.* THE ZION CHURCH OF THE CITY OF BALTIMORE.

*Exemption of Charitable or Benevolent Institutions from Taxation under the Act of 1876, ch. 260, sec. 2—What Property not Exempt under that Act—Laws granting Exemptions to be strictly construed—When the Affidavit fails to sustain the Allegations of a Petition under the Act of 1876, ch. 260, sec. 28, the Answer to be taken as True—What a Burying Ground within the scope of the Exemptions granted by the Act of 1876, ch. 260, sec. 2.*

Under the clause of the Act of 1876, ch. 260, sec. 2, which exempted from State, county or municipal taxation, "hospitals or asylums, charitable or benevolent institutions, so far as used for the benefit of the indigent and afflicted, and the ground which the buildings used as such hospitals, asylums, charitable or benevolent institutions, shall actually cover, and the equipments owned by such corporations or institutions," the following property is exempt from taxation, viz:

The lots and buildings covering the same with the furniture therein, belonging to St. Peter's Academy, a free school for the education of female children, mainly supported and conducted on contributions from the charitably disposed, having no income or revenue which could be capitalized for assessment and taxation, and no tuition fees chargeable for attendance on the school. For the same reasons, the property known as St. Alphonsus Hall, a school for the gratui-

21                     v. 50.

Appeal Tax Court of Balt. City *vs.* St. Peter's Academy, *et al.*

tous education of indigent children; the property known as St. Lawrence's School, used for similar purposes; and the lots, buildings and furniture of the parochial schools in Baltimore City, belonging to Rock Hill College, and to the Trustees of the Catholic Cathedral Church of Baltimore.

The lots and buildings erected thereon, with the library and furniture and the silver plate composing the sacramental vessels, belonging to St. Mary's Seminary, a college connected with the Roman Catholic Church, for the education of indigent students, supported by the contributions of the members of the Church in the respective dioceses from which such students severally come, are exempt from taxation.

The City, State and Railroad Stocks held by this latter corporation, as gifts, the income from which is dedicated to the use of the students, are not exempt from taxation. All exemptions from taxation are to be strictly construed; and there are no words in the aforementioned clause of the Act of 1876, which would cover the endowments or investments, by the income from which the charitable work of the corporation is sustained and its expenses defrayed.

In the case of the Trustees of the Catholic Cathedral Church of Baltimore, owners of the property known as Calvert Hall, an educational institution, the affidavit filed, did not sustain the averments of the petition in proceedings under the Act of 1876, ch. 260, sec. 28, and the answer denied them. HELD:

That under the Act of 1876, ch. 260, secs. 28 and 30, the affidavit having failed to sustain the averments of the petition, the answer must be taken as true and the petition dismissed; so as to leave the valuation and assessment of the property to stand as made by the appellant.

In the case of the General Workingmen's Sick Relief Union of Baltimore, owners of the property known as Mechanics' Hall, consisting of a lot and building with the furniture, stock, &c. therein, the petition in proceedings under the Act of 1876, ch. 260, sec. 28, alleged, that the property was exempt under that Act, as being a charitable and benevolent institution maintained by charitable offerings, either in whole, or in great part, and the affidavit of the president of the corporation, was to the effect, that the facts set forth in the petition are true as therein stated. HELD:

That this affidavit sustained the claim to exemption as to part of this property.

Appeal Tax Court of Balt. City *vs.* St. Peter's Academy, *et al.*

In the case of the Red Men's Hall of Baltimore, the petition in proceedings under the Act of 1876, ch. 260, sec. 28, which was supported by the affidavit, averred that the two upper stories of the building and the furniture, were used for the benefit of the indigent and afflicted, for the relief of widows and orphan children ; but that the first story was rented for purposes of trade at a fixed money rental *per annum*, which was received by the appellee. ·HELD :

That this was a case for the application of the principle of capitalization.

In the case of the Zion Church of the City of Baltimore, the order of the Court below exempted from valuation and assessment the vacant lot in front and in the rear of the church, under the clause of the Act of 1876, ch. 260, sec. 2, which exempted from taxation, "grave-yards, cemeteries paying no dividends, and burying grounds set apart for the use of any family, or belonging to any church or congregation." It appeared from the affidavit filed, that the church is located nearly midway between Gay and Holiday streets, in said city, on a large lot which is wholly dedicated by the original deeds of conveyance in trust, to burial as well as church purposes; that two of the early pastors of the church are buried in the lot with graves appropriately marked, and that it is proposed to bury therein the present aged pastor, when he shall have died, and to erect a monument over his remains; and that the lot has never been used for any other than church and burial purposes. HELD :

That all of this lot, save what is covered by the church building and entrance ways, is a burying ground belonging to a church or congregation within the terms of the exemption.

APPEALS from the Baltimore City Court.

These are appeals from orders of the Court below, passed on the 23rd–25th May, 1878, in proceedings severally instituted by the appellees under the Act of 1876, ch. 260, sec. 28, by which exemptions from taxation under the second section of that Act were allowed the appellees; and from which several orders the respondent, the Appeal Tax Court, appealed. The cases are further stated in the opinion of the Court.

The causes were submitted to BARTOL, C. J., MILLER, ALVEY and ROBINSON, J., for the appellant, and for the

appellee the Red Men's Hall, and were argued for the other appellees.

*A. Leo Knott, State's Attorney for Baltimore City,* and *Charles J. M. Gwinn, Attorney-General,* for the appellant.

The valuations and assessments which were made of the property of the appellees under the Act of 1876, ch. 260, must be recognized as remaining obligatory upon the appellees, unless the Court is prepared to say that the grant of exemptions made by the Act of 1878, ch. 413, sec. 3, can be held to have operated retrospectively, so as to affect the levy made by the corporate authorities of Baltimore City for the year 1877. This levy created a debt or duty for that year, chargeable upon each one of the appellees, and upon all other persons to whom property had been assessed in that city. *State vs. Mayhew,* 2 *Gill,* 496. This debt or duty is in the nature of a contract obligation, because the law implies a promise on the part of every one assessed with a tax, that he will pay such tax. *Mayor, &c. vs. Howard,* 6 *H. & J.,* 395; *Dashiell vs. Mayor, &c.,* 45 *Md.,* 621.

This Court has said that it is a universal rule that no statute will be construed to act retrospectively unless such purpose be plainly expressed in the statute. *Baugher vs. Nelson,* 9 *Gill,* 303; *State vs. Norwood,* 12 *Md.,* 206; *Clark vs. Mayor, &c.,* 29 *Md.,* 283; *Davis vs. Clabaugh,* 30 *Md.,* 508; *Williams, Adm'x vs. Johnson, Adm'x,* 30 *Md.,* 500; *Herbert & Hairston vs. Gray,* 38 *Md.,* 529; *Williar vs. Baltimore Butchers' Loan and Annuity Association,* 45 *Md.,* 555, 556; *Prince vs. United States,* 2 *Gallison,* 208; *Maxwell on the Interpretation of Statutes,* 66, 190, 191; *Archer vs. Bokenham,* 11 *Mod.,* 150; *Henderson's Tobacco,* 11 *Wall.,* 656, 657.

The Act of 1878, ch. 413, sec. 3, in exempting the parsonages connected with buildings used exclusively for public worship, and the grounds appurtenant to such

buildings, which were necessary for their respective uses, as well as the buildings; and in exempting the ground appurtenant to hospitals, asylums, charitable or benevolent institutions which were necessary to their respective uses, as well as the buildings; and in exempting the buildings, furniture and equipment of incorporated educational or literary institutions, contains no word from which the inference can be drawn that the Legislature intended that the Act should operate retrospectively. On the contrary, the second section of the Act of 1878, ch. 413, upon which the third section is made directly dependent, expressly shows in its concluding words, that it was intended to be prospective in its operation, because it declares what property *shall be* liable to be valued to the respective owners thereof.

The grant of exemptions, therefore, made by the third section of the Act of 1878, ch. 413, cannot be held to operate retrospectively; and, even if this Court should be of the opinion that the third section of the Act of 1878, ch. 413, repealed the second section of the Act of 1876, ch. 260, nevertheless the property valued to each one of the appellees was properly valued to such appellee. We shall not, on our part, contend that the exemptions granted by the Act of 1876, ch. 260, sec. 2, were repealed by the third section of the Act of 1878, ch. 413. We shall only insist that the appellees are confined to the exemptions expressly granted by that Act.

### As to Rock Hill College.

This corporation would seem to be an institution properly exempted from taxation under the Act of 1876, ch. 260, sec. 2.

### As to the Trustees of the Cathedral Church of Baltimore.

The appellees, by the Act of 1820, ch. 84, were author_ized to hold property—real, personal or mixed, not exceed_

ing a certain amount—exclusive of the Cathedral. The property thus held was not exempted from taxation by the Act of incorporation. The exemption can only be claimed under the Act of 1876, ch. 260, sec. 2. It would seem to have been the purpose and meaning of the second section of the Act of 1876, ch. 260, that no corporation should be enabled to claim the benefit of the exemptions granted by that Act, unless such corporation was a religious or charitable corporation, actually using as a corporation, for religious or charitable purposes exclusively, the ground and buildings for which the exemption is claimed.

*As to the Zion Church of the City of Baltimore.*

It does not appear from the petition in this case that more than two bodies remain buried in the ground on which Zion Church is situate. The graves yet remaining near the church, are those of two former ministers of the congregation; the other bodies buried in the lot have been removed to some other burial place. The petition states that it is proposed to bury in the lot around the church the present minister of the church when he shall depart this life. As the petition shows that the present incumbent has been for more than forty years such minister, it would seem that the last burial in the lot—the burial of the minister who preceded the present incumbent—must have taken place more than forty years ago.

So far as we may gather from the petition and affidavit filed in the case, the use of the lot as a burying ground for members of the congregation has been abandoned for many years.

Under these circumstances, it does not seem to be right that in executing the Act of 1876, ch. 260, sec. 2, we should treat the whole of the lot on which Zion Church stands as the burying-ground of a congregation. It would seem that all the ground surrounding Zion Church ought

OCTOBER TERM, 1878. 327

Appeal Tax Court of Balt. City *vs.* St. Peter's Academy, *et al.*

to have been valued, except so much as, in a cemetery, would be accounted proper enclosures for the graves of the two ministers who are buried near the church; and except so much as may suffice for another space of ground, of proper dimensions, for the interment of the present minister, when he shall depart this life.

*As to the Red Men's Hall of Baltimore.*

The order passed in this case must be reversed, because it appears by the petition that portions of the building owned by the appellee are rented at a money rent to strangers, to be used for purposes of trade. The portions of the building so used constitute taxable properties.

*As to St. Peter's Academy, St. Alphonsus Hall, St. Lawrence's Church.*

It is true that the Statute of 43 Eliz., ch. 4, commonly called the Statute of Charitable Uses, was never in force in this State. This statute, however, created no new law; it only created a new and ancillary jurisdiction. *Attorney-General vs. Mayor of Dublin,* 1 *Bligh,* 312, 347; *Vidal vs. Girard's Executors,* 2 *Howard,* 195; *Ould vs. Washington Hospital,* 95 *U. S.,* 309, 310.

A different doctrine was set forth in the preliminary words of the opinion in *Dashiell vs. Attorney-General,* 5 *H. & J.,* 398, founded, as was then said, upon the opinion of the Supreme Court in *Baptist Association vs. Hart's Executors,* 4 *Wheat.,* 1. It will be seen, by reference to the opinion of the Supreme Court in the case cited, that the language of Chief Justice MARSHALL did not justify the broad theory of our Court of Appeals, that "the peculiar law of charities *originated* in the Statute of 43 Eliz." As it would now seem to be settled that the Statute of 43 Eliz., ch. 4, did not create any new rule of law, (*Vidal vs. Girard's Executors,* 2 *Howard,* 195; *Ould vs. Washington Hospital,* 95 *U. S.,* 309, 310,) it is probable that, when the

occasion arises, this Court may modify the ruling made by its predecessors in *Dashiell vs. Attorney-General,* 5 *H. & J.,* 398, and hold that the Statute of 43 Eliz., ch. 4, was declaratory of the common law in force when it was enacted, except in so far as it afforded a new remedy.

Under the authority of all the cases, we may, at all events, look to this Statute of Elizabeth as affording a just description of institutions which must properly be regarded as charitable. These are, in the preamble of the Act, classified as institutions for the relief of aged, impotent and poor people; for the maintenance of sick and maimed soldiers and mariners; for schools of learning, free schools and scholars in universities; for the repair of bridges, ports, havens, causeways, churches, sea-banks and highways; for the education and preferment of orphans; for the relief or maintenance of houses of correction; for the marriages of poor maids; for the support, aid and help of young tradesmen, handicraftsmen and persons decayed; for the relief or redemption of prisoners or captives; and for the aid or ease of poor inhabitants in the payment of taxes. Institutions falling under any one of the classes above set forth may properly claim to be charitable institutions.

Such charitable institutions, existing in this State, have been exempted from taxation by the Act of 1878, ch. 413, sec. 3, to the extent therein set forth; but under the Act of 1876, ch. 260, sec. 2, they were exempted in 1877 only so far as they were used for the benefit of the indigent and afflicted.

Baltimore City Court, in considering the appeals made to it, was administering the Act of 1876, ch. 260, only. It was not at liberty to consider the averments that the institutions referred to were "charitable and benevolent institutions, maintained by charitable offerings in whole, or in great part," even when accompanied by proof that there was an annual deficit in the revenue of said institu-

tions, as supplying the averment necessary to any complete exemption, that such institutions were wholly used for the benefit of the indigent or afflicted.   The institutions were subject to taxation to the extent to which they were applied to other uses than those of the indigent and afflicted, whether there was any net revenue or not.   They were exempted from taxation if they were wholly used for the benefit of the indigent and afflicted, whether there was a net revenue or not, if such net revenue was derived from charitable contributions, which were received for, and expended in, the current expenses of such institutions. Charitable contributions, not invested as a fund, but used in defraying the necessary expenses of a charity, are not elements of taxable value.

The petition which omitted the averment, and the proof, which did not sustain the allegation, that the institutions in question were wholly used for the benefit of the indigent and afflicted, did not make a case upon which Baltimore City Court was authorized to determine, under the Act of 1876, ch. 260, that the property of such institutions should be stricken from the lists of property assessed to them respectively.   It would seem, therefore, that the orders of Baltimore City Court in these cases ought to be reversed.   It will then be the duty of that Court to determine whether any portions of said institutions were used in earning revenue; and if so, whether, after charging against the revenue so earned all the elements of labor and expense used in earning it, there remained any net balance from the particular source which could be capitalized as a basis for taxation.

### As to St. Mary's Seminary.

The petition in this case does not aver that the lots of ground upon which the buildings of the appellee were erected, and the buildings themselves, were wholly used for the benefit of the indigent and afflicted.   In the

absence of such averment, and of all proof necessarily tending to this conclusion, it would seem that the order of Baltimore City Court could not be sustained, if it had directed these properties only to be stricken from the list of property, assessed to the appellee under the Act of 1876, ch. 260.

It cannot be doubted that the ground not covered by the buildings of the seminary was subject to valuation and assessment. The Baltimore city stock and Philadelphia city stock were subject to valuation and assessment. *Murray vs. Charleston,* 96 *U. S.,* 447. The Maryland Defence Loan was exempt from assessment. (1861–2, *ch.* 142, *sec.* 9.) The Baltimore and Ohio R. R. Co. preferred stock was created under the Act of 1868, ch. 471, sec. 219, and was not a part of the shares authorized to be issued by the charter of that company, and was subject to taxation.

The General Assembly, by the Act of 1878, ch. 413, has properly relieved the appellees, and other institutions of like character, from all burdens likely to impair or lessen their usefulness in the future; but it could not afford them relief from the burdens imposed by the levy made for the year 1877, and it has not attempted the task.

*As to the General Workingmen's Sick Relief Union of Baltimore.*

The petition of the appellee was defective, because it did not aver that the property which had been valued and assessed to it, was used for the benefit of the indigent and afflicted. Under the second section of the Act of 1876, ch. 260, property was not exempted from taxation because it belonged to a charitable or benevolent institution. It was, when in such ownership even, not exempted from taxation, except to the extent to which it was used for the benefit of the indigent and afflicted. It became, therefore,

the primary duty of every owner to whom any property was assessed, and who claimed exemption of such property, in whole or in part, from valuation and assessment because of such uses, to set forth fully "the facts of the said case, and the grounds upon which said exemption was claimed." 1876, *ch.* 260, *sec.* 28; *Pacific Mail S. S. Co. vs. Comm'rs of Taxes*, 64 *N. Y.*, 541. The appellee in this case has not complied with this duty.

*Wm. Pinkney Whyte*, for St. Peter's Academy, St. Alphonsus Hall, St. Lawrence's Church and St. Mary's Seminary.

*As to St. Peter's Academy and St. Lawrence's Church.*

St. Peter's Academy, a school attached to St. Peter's Church, and St. Lawrence's School, attached to St. Lawrence's Church, are parochial schools, established and conducted for the education of the children of the indigent members of those congregations, the great body of whom contribute nothing to their support, and a few only pay the smallest stipend for the benefit of the schools, leaving for the expenses of conducting each of the schools a large deficit, which is made up by private charitable contributions.

Such schools, in the language of Judge JONES, of the Court of Common Pleas, Cleveland, Ohio, in his opinion, delivered in July, 1878, in the case between the County Treasurer and the Catholic Bishop of that diocese, "being built and partially carried on by voluntary donations, and no income arising therefrom, were exempt from taxation, as institutions purely of public charity."

*Cooley on Taxation*, 145, refers to the exemption of property of corporations or associations, devoted exclusively to the work of public charity, or in other directions, where what they accomplish operates in the relief of public burdens and the like, as a just and proper exercise of the legislative power to exempt from taxation.

Here the school-houses are used solely to carry on schools for the indigent children of the congregations, and the small sums, contributed by a few of the scholars towards the expenses, are in no sense other than voluntary aid rendered to the charitable undertaking. *Wesleyan Academy vs. Inhabitants of Wilbraham,* 99 *Mass.,* 599. *Co. Comm'rs Fred'k Co. vs. The Sisters, &c., St. Joseph,* 48 *Md.,* 34.

But if there was any doubt as to the true construction of the Act of 1876, ch. 260, sec. 2, it is set at rest by the Act of 1878, ch. 413, sec. 3, which is in the nature of a declaratory Act, wherein the exemption clause of the assessment law is amplified, so as to apply "to the buildings, equipment and furniture of hospitals, asylums, charitable or benevolent institutious, or to the ground appurtenant thereto, which may be necessary for the respective uses thereof; or to the buildings, furniture, equipment or libraries of incorporated educational or literary institutions, or to the ground appurtenant thereto which may be necessary for the respective uses thereof." Under this Act the exemption is beyond question, and since this Act of 1878 repeals substantially the Act of 1876, ch. 260, and sets up a new rule of assessment, it is impossible to enforce the taxation of the property in question at this time, even if the provisions of the Act of 1876 did not protect it from such assessment and taxation. *Wade, et als. vs. St. Mary's Industrial School,* 43 *Md.,* 181.

*As to St. Alphonsus Hall.*

Was the property assessed as the Schools of St. Alphonsus Parish, consisting of a lot of ground and a single building covering the entire lot, known as St. Alphonsus Hall, liable to assessment under the provisions of the Act of 1876, ch. 260, sec. 2?

The property referred to belongs to the Society of the Redemptorists, which was incorporated by the Act of

OCTOBER TERM, 1878. 333

Appeal Tax Court of Balt. City *vs.* St. Peter's Academy, *et al.*

1842, ch. 26, for the purpose of affording gratuitous education. That it has always been considered a charitable institution used for the indigent, is shown by the action of the Legislature of 1860, ch. 62, when taxes were refunded to it paid in ignorance, because it was a charitable corporation exempted by Act of 1841, ch. 23.

By the Act of 1870, ch. 173, the charter was made perpetual.

Such a school, founded by charitable donations for the sole object of instructing the indigent children of a parish gratuitously, and yet receiving contributions from pupils of ability to make them; "deriving its means of dispensing charity from the donations of individuals and of the public; and applying its funds exclusively to the general object of its institution, is clearly a school for charitable purposes." *Asylum vs. Phœnix Bank,* 4 *Conn.,* 172.

It is expressly covered by the terms of the Act of 1876, ch. 260, sec. 2, as "a charitable institution used for the indigent."

*As to St. Mary's Seminary.*

St. Mary's Seminary is a college, connected with the Roman Catholic Church, for the education of indigent students for the order of the priesthood, with no means of subsistence, except from the offerings of charity. It was founded for the promotion of piety and learning; and for imparting assistance to the members of the body, in order to enable them to prosecute their devotions and studies with greater ease and assiduity. 3 *Stephen Com.,* 171.

Its students are supported by contributions of the pious members of the church, in the respective dioceses from which the students severally come. The services of the faculty, president and professors, are given voluntarily, without reward of any sort.

The college comprises two large buildings, covering almost entirely the lots of ground referred to in the pro-

ceedings, except that portion designated as covered by the church and chapel.

The silver vessels used in the administration of the sacrament were included in the original assessment, but are excluded by the order of the Court below.

The stocks held by the institution were donations, dedicated to the use, exclusively, of these indigent students, and the income thereof is so applied in accordance with the donors' intentions. All of the resources of the institution are applied to the education of these students, and none of the property earns any income whatever, so that there is no income that can possibly be capitalized.

St. Mary's Seminary is an educational institution, clearly eleemosynary in its character, and surely is exempt under our law from assessment and taxation. It was founded by charitable donations, for the express purpose of furnishing gratuitously to students for the priesthood an education fitting them for their high office and vocation.

The eleemosynary sort of institutions are such as are constituted for the perpetual distribution of the free alms or bounty of the founder of them to such persons as he has directed.

Of this kind are all hospitals for the maintenance of the poor, sick and impotent, and all colleges, whether in our universities or out of them, which colleges are founded for two purposes, 1st, for the promotion of learning, &c., 2nd, for imparting assistance to the members of the body in order to enable them to prosecute their devotions and studies with greater ease and assiduity. 1 *Black. Com.,* *Book* 1, *ch.* 18, *p.* 471.

Colleges and academies, established for the promotion of piety and learning, and endowed with property by public and private donations, are in a legal sense equally with hospitals for the relief of the sick, poor, &c., considered as private eleemosynary corporations. *Regents of University vs. Williams,* 9 *G. & J.,* 365, 401; *Vidal vs. Girard's Ex'rs,* 2 *How.,* 191.

Appeal Tax Court of Balt. City *vs.* St. Peter's Academy, *et al.*

The proposition of the appellant, that the Statute of 43 Eliz., ch. 4, was never in force in this State, and that the peculiar law of charities did not originate in that statute, but that we may look to it, to see what institutions are properly regarded as charitable, is not disputed. The principle established by the decision in the case of the *Co. Comm'rs Frederick Co. vs. the Sisters, &c. St. Joseph,* 48 *Md.,* 34, has been engrafted upon the legislation of the United States in regard to the District of Columbia. *See Acts of Congress, 2nd Sess., 45th Cong., ch.* 180, *sec.* 14.

*Thomas A. Whelan,* for Rock Hill College and The Trustees of the Catholic Cathedral Church of Baltimore.

The appellee, the Rock Hill College, was incorporated by the Act of 1865, ch. 10, "with a view to charitable, literary and educational purposes." Its defined purposes are, therefore, charity and education. It became the owner of certain property in the City of Baltimore on Courtland street, on which it erected a school-house.

The appellee, The Trustees of the Catholic Cathedral Church of Baltimore, was incorporated by the Acts of Assembly of 1795, ch. 15, and 1820, ch. 84, with power to purchase and hold real estate. Under this provision, it became the owner of certain property on Franklin street in the City of Baltimore, on which it erected a school-house, and of certain property in said city, on Saratoga street, on which was erected a school-house known as Calvert Hall.

The property is wholly used for the benefit of the indigent. Such is the proof in these cases. The buildings were not used, nor were they ever intended to be used, as a means of earning any revenue. These are clearly eleemosynary institutions, and should be exempted under the Act of 1876, ch. 260.

*James A. L. McClure,* for the General Workingmen's Sick Relief Union of Baltimore City.

The property of this appellee was specially exempted from taxation under the Act of 1865, ch. 180.

The Act of 1876, ch. 260, sec. 2, only repealed all those Acts exempting property from taxation, which was not exempted by the Act of 1876, ch. 260, sec. 2.

Now the Act of 1876, ch. 260, sec. 2, exempted from taxation benevolent and charitable institutions; and the Act of 1865, ch. 180, expressly exempted this property from taxation, particularly setting forth that it was a benevolent and charitable institution.

Clearly, the Act of 1876, ch. 260, sec. 2, did not intend to repeal all Acts granting exemptions from taxation, for it would have said so in plain words. It meant to deny exemptions only to such property as was not exempted by itself. As it exempted benevolent and charitable institutions, it did not affect the Act of 1865, ch. 180.

The Act of 1878, ch. 413, sec. 3, exempts from taxation "the *buildings, equipment* and *furniture* of charitable or benevolent institutions, and the *ground* appurtenant thereto necessary for the uses thereof." This language is broad enough to cover the exemption claimed by and allowed to the appellee.

The rights litigated between these parties are not finally determined. This Court will, therefore, allow the appellee the benefit of this last named Act.

The object of the appellee, as read from its Constitution, is—

1st. "Regular relief of sick members of the association; and regular or temporary relief of the widows and orphans of deceased members."

2nd. "The institution and continual enlargement of a library accessible to all its members."

Appeal Tax Court of Balt. City *vs.* St. Peter's Academy, *et al.*

*Luther M. Reynolds,* for the Red Men's Hall of Baltimore.

As to the point of the appellant, that the assessment is good for 1877, as the Act of 1878 is not retroactive, the appellee contends, that the same having been in force when the Court passed upon the case, it was proper for the Court to regard it, and strike the property from the tax-list; and further, that if the Act of 1878 is not retroactive, yet the power under which said taxes were levied having been in effect repealed and not in existence, the city would have no power to collect said taxes, and this Court will hardly reverse the Court below on a technicality of this kind, when it would not enable the city to collect the taxes.

*William F. Frick,* for the Zion Church of the City of Baltimore.

The only question for this Court to determine in this case is, whether the appropriation up to this time for actual graves of a part only of this lot (the whole of which is, by the terms of its holding, forever dedicated to burial purposes) renders that part of it not yet so appropriated liable to taxation.    This may be fairly stated to be the only point made by the appellant.

The ground has never before been treated as subject to taxation.    It has been considered to be exempt under the terms of all the revenue laws preceding the Acts of 1876 and 1878; and it is respectfully insisted that it is clearly exempt under those Acts, as "a burying-ground belonging to a church or congregation."    It has been so used in the past, and it is proposed so to use it in the future, and it cannot now be legally used for any other purpose.    It is not of unreasonable dimensions, but, on the contrary, so contracted in size that it can only be used under limitations as to the number and character of the interments in it.

22                    v. 50.

The suggestion is certainly a novel one, that from time to time, when assessments of property are to be made for the purposes of taxation, admeasurements are to be taken in burial grounds, of the area included in graves actually existing, and in such as are, at that time, actually contemplated; and that, with the exception of the area so ascertained, all the rest of the burying-ground is to be treated as subject to taxation. There are numerous small burying-grounds throughout the State "set apart for the use of a family." See Acts of 1876 and 1878. These may contain, at the time of an assessment, only a few graves; and it may even be reasonably doubtful in some cases whether the number will ever be increased. Was it the intention of the Legislature that only the ground actually occupied from time to time by such graves should be exempt; or was it intended to exempt the lot itself actually set apart, enclosed and dedicated for the purposes of a family burying-ground?

If such admeasurements must be made in one, it must be made in all burying-grounds, private and public; and the result would be, not that the "burying-grounds set apart" would be exempt, but only the "graves" of those who might be buried in them. Indeed, the principle contended for, if carried to its logical results, would involve a still more extraordinary conclusion, namely: that if a member of a congregation should buy a lot in the burying-ground belonging to his church, that lot would be subject to taxation until he should bury some one in it, and then only that part of it would become exempt which was so used. When a lot is once, as in this case, formally dedicated "as a burying place forever," it must, whether the use of it for that purpose be general or limited, continuous or interrupted, frequent or occasional, be still treated as a property incapable of any other use, until, by virtue of the provisions of the Act of 1868, ch. 211, and by means of the proceedings therein indicated, the trust under which it is

held is destroyed. Not until then can it be applied to any of the purposes for which real property is ordinarily used; and not until it can legally be so used was it within the contemplation of the Legislature to subject it to taxation. The assessors, in this case, have actually valued this property as if it were in the power of these trustees, in whom it is vested, to cut it up into building lots and sell it or lease it for that purpose. That they have no power to do so, will be conceded. That it is held by them solely "as a burying place forever" for the members of Zion Church, and that it has hitherto been so used, will also be conceded.

MILLER, J., delivered the opinion of the Court.

In this case the petition claims that certain property, consisting of two lots, with the buildings and improvements thereon erected, and a small amount of furniture therein used, constituting "*St. Peter's Academy,*" and situated on the corner of Booth street and Calendar alley, in the city of Baltimore, is exempt from taxation, under the clause of the second section of the Act of 1876, ch. 260, which expressly exempts from State, county or municipal taxation "hospitals or asylums, charitable or benevolent institutions, so far as used for the benefit of the indigent and afflicted, and the ground which the buildings used as such hospitals, asylums, charitable or benevolent institutions shall actually cover, and the equipments owned by such corporations or institutions."

By affidavits and other proof taken by agreement, and submitted to this Court as constituting a part of the record, it appears that the title to this property is held by an association formed under the Act of 1852, ch. 231, called "The Sisters of Mercy in the City of Baltimore." The objects of this corporation, as declared in their articles of association, is "to establish and maintain an Academy and free school in said city for the education of female

children, to open and maintain a house of protection for homeless indigent females, to qualify them by training and education for the discharge of such domestic duties as will enable them to procure protection and support, to visit and nurse the sick, and for that purpose to establish and maintain an infirmary, or more than one, in the discretion of the corporation, if deemed convenient and necessary for such purpose." It is also further provided that "any female child of good morals shall be entitled to the advantages of the school, provided that all pupils shall in all respects be subject to the regulations of the school." From the affidavit of the Rev. Edward McColgan, it is shown that this St. Peter's Academy is a building in which there is a private chapel, and the rest of the building is occupied as a residence for the Sisters of Mercy, who conduct in the same building a school free in whole to some of the pupils, and to others the education is given when they are willing and able to contribute a small sum towards the expenses of the school, which entire amount annually falls far below the expenses of the academy, and the deficiency is made up by contributions of the charitably disposed; that there is no income or revenue which can be capitalized for assessment and taxation, but the academy is a source of yearly expense to the said Sisters who hold the title to the property; that it is in no sense constituted for private gain, but is essentially a charitable institution; that the school-house upon the lot, also assessed, is in reality a building in which is conducted a female parochial school, connected with the congregation of St. Peter's Church, in the nature of a free school for the indigent children belonging to said church; that all children of good morals are admitted free, but only those who are willing and able to contribute give an insignificant sum in aid of the expenses, which fall largely upon the members of the church; that there is no income or revenue whatsoever derived from said school which could be capi-

talized for assessment and taxation; "*that no tuition fees are charged as a requirement for attendance on the school, but the same is conducted on money derived from charitable donations.*"

From the character of this institution, as thus shown by the proof, we have no hesitation in declaring that these lots and the buildings covering the same, with the furniture therein, occupied and used for the purposes stated, are exempt from taxation under the clause in question. In so deciding we in nowise contravene, but re-affirm what we have said in the case of *The County Commissioners of Frederick County vs. The Sisters of Charity of Saint Joseph,* 48 *Md.,* 34. In that case the proof disclosed the fact that among other improvements for which exemption was claimed, there were one or more buildings used for academic purposes, in which, at the time of the assessment, *there were seventy-two scholars receiving education, who paid, and were required to pay therefor, at the rate of* $250 *per annum,* and it was held that so much of this property as was appropriated to this secular and educational purpose "*for revenue*" was liable to taxation, and that the fact that the surplus *revenue* thus derived was devoted to charitable uses did not entitle the property from which it accrued, to exemption. Then, after a review of the authorities, it is said: "The conclusion to be drawn from these premises is, that all the property of the appellees, real and personal, used and occupied in the maintenance and conduct of an academy or school for the education of young females, *so far as it is a source of revenue to the appellees,* is a proper object for assessment, notwithstanding the same buildings or property may be partially used for hospital purposes, or religious worship. If the property is indivisible, so that the value of the several parts cannot be ascertained, the amount of the *net income* from the academy or school may be capitalized as the basis of assessment." If in the present case there was proof that any income or revenue

was derived from the education of children at this academy or school by means of charges or tuition fees, or if it were not, on the contrary, clearly proved that no revenue was in fact so derived, that there was no charge for tuition, and that *voluntary* contributions only were made by those *willing* and *able* to pay, then the principal of capitalization would have to be applied. But, as we have seen, the proof on this point is too clear and explicit to admit of doubt; and the order directing this property to be stricken from the list of property valued to the owner must be affirmed.

*Order affirmed.*

(Decided 31st January, 1879.)


In the case of "*St. Alphonsus Hall*" the right to exemption is equally plain. By the affidavit of the Rev. Andrew Ziegler, taken and submitted under the same agreement as in the preceding case, it appears that the title to the property known as St. Alphonsus Hall or School is held by the Society of "The Redemptorists," a corporation created by the Act of 1842, ch. 26, and perpetuated by the Act of 1870, ch. 173, and organized for the purpose of affording "gratuitous education" to indigent children; that the schools conducted in this Hall are parochial schools connected with St. Alphonsus Church, and carried on for the education of the indigent children of the congregation, the great body of whom contribute nothing whatever to their support, but a few make small *voluntary donations*, which are expended in the purchase of books; that the schools are literally free schools for the education of those children who are indigent; that the schools yield no income or revenue whatsoever, but are a source of yearly expense to the congregation of St. Alphonsus Church, who supply them with private contributions; that *no charge* is made for the instruction and education of such children; and that the schools are supported as a

charity by private persons charitably disposed. It is plain therefore that the order appealed from in this case must be affirmed.

*Order affirmed.*

(Decided 31st January, 1879.)

The same thing is true in regard to *"St. Lawrence's School,"* situated on Fort Avenue, Locust Point, and assessed to *St. Lawrence's Church.* The affidavit of Rev. Peter McCoy, taken in the same way, shows that the building in which this school is conducted is built upon ground the title to which is in the Roman Catholic Archbishop of Baltimore, a corporation *sole* created by the Acts of 1832, ch. 308, and 1868, ch. 268, and that the school is conducted by charitable offerings for the children of indigent members of St. Lawrence's Church; that it is a free school and yields no income or revenue, but is a source of yearly expense to the congregation of St. Lawrence's Church; that indigent children are instructed in this school and it is free to all of such class of good morals and willing to be subject to its regulations; that no charge is made for the instruction and education of these children, and it is supported as a charity by money derived from and contributed by private persons charitably disposed; that some of the children who are able make small voluntary donations, which are expended in the purchase of books, but no exaction is made upon them nor tuition fees charged, and the school is purely a charitable institution. The order in this case must also be affirmed.

*Order affirmed.*

(Decided 31st January, 1879.)

More difficulty attends the disposition of the case of *"St. Mary's Seminary,"* the grounds and buildings of which are located on Pennsylvania Avenue, near Franklin

Street. The property which the order appealed from declares to be exempt from taxation, consists not only of the lots and buildings thereon erected, a library, and a certain amount of silver composing, as alleged, the silver vessels used in the administration of the sacrament, but also of quite a large amount of city, State and railroad *stocks*, and of a carriage, a horse, and three cows. By the affidavit of the President of the institution, taken and submitted under the agreement mentioned in the preceding cases, it appears that this property belongs to "The Associated Professors of St. Mary's Seminary in Baltimore City," a corporation created by the Acts of 1838, ch. 137, and 1860, ch. 184; that this Seminary is a college connected with the Roman Catholic Church, for the education of indigent students who have no means of subsistence except from the offerings of charity; that it was founded for the promotion of piety and learning, and its students are supported by the contributions of the members of the church in the respective dioceses from which such students severally come; that no charge or exaction is made or demanded for their education; that one or two of them from time to time are able and willing to meet their expenses, and that the services of the Faculty, President and Professors are given voluntarily and without reward of any sort. The affidavit then further states that the stocks held by the institution were donations dedicated to the use of the indigent students, and the *income* thereof is applied to such use in accordance with the donors' intentions; that all the resources of the institution are applied to the education of these students, and none of the property earns any income from rents, nor are there any tuition fees, receipts from board, charges for education or other revenue which can be capitalized for valuation and taxation; and that the institution is purely charitable and furnishes gratuitous education to students for the priesthood.

We have no difficulty in deciding that the facts thus proved bring the lots, buildings, library, and silver vessels within the terms of the exemption clause relied on.   But in view of the construction placed upon that clause in the case of *County Commissioners vs. The Sisters of Charity of St. Joseph*, (48 *Md.*, 34,) we cannot reach the same conclusion in regard to the *stocks* and other personal property referred to.   In that case attention is called to the extremely guarded language used in describing the property to be exempted, and to the fact that the enumeration of the exemptions is followed by the imperative declararation that "all other property in this State of every kind, nature and description whatsoever, shall be liable to valuation, assessment and taxation," as plainly indicating that no latitude of construction is to be indulged in ascertaining the objects of exemption.   The revenue or income derived from the *paying pupils* in the academic department of that institution was devoted and applied to the charitable purpose of educating the *indigent pupils* in the same establishment, and yet it was emphatically decided that this fact did not entitle the property from which such revenue accrued to exemption.   It would seem then to follow as an inevitable conclusion, that the fact that the revenue and income derived in the present case from these investments in stocks was applied and devoted to the charitable purposes of this institution, does not entitle the stocks themselves from which it arose to exemption.   The question here is not what constitutes a "*charity*" or a "*charitable institution*" in the broad sense of the terms, but what is the meaning of the terms as used in the particular clause of the particular statute now before us?   The term "institution" is sometimes used as descriptive of the building, establishment or place where the business or operations of a society or association are carried on, and at other times it is used to designate the organized body.   *Gerke vs. Purcell*, 25 *Ohio State Rep.*, 244.   It seems to us very

346 MARYLAND REPORTS.

Appeal Tax Court of Balt. City *vs.* St. Peter's Academy, *et al.*

clear that in the first part of the clause in question, it is used in the former sense exclusively. The words are "hospitals or asylums, charitable or benevolent institutions, so far as *used* for the benefit of the indigent and afflicted, and the ground which the *buildings used as such* hospitals, asylums, charitable or benevolent institutions actually cover." Thus far the description is of institutions *used* for a particular purpose, and of buildings *used as such institutions.* This language is appropriately descriptive of a building, establishment or place where the operations of an association or corporation are conducted, but wholly inappropriate as the designation of organized corporate bodies or associations. But it is added, "and the equipments owned by such corporations or institutions." The word "owned," in connection with "corporations," indicates that the term "institutions" is here used in the latter and broader sense. But this gives exemption only to "*equipments,*" a term which plainly means the visible, tangible furniture, fixtures and apparatus on the premises, which are usual and necessary for the operations there conducted. In this case it clearly embraces the library and silver vessels, as well as the necessary furniture for the college buildings, but it is a term altogether inappropriate as a description of the endowments or investments by the income from which the charitable work is sustained and its expenses defrayed. No one would think of employing this term to describe that species of property. The clause in the Massachusetts Statute, under which the case of *Wesleyan Academy vs. Wilbraham,* 99 *Mass.*, 599, was decided, exempted "the *personal property* of literary, benevolent, charitable and scientific institutions, incorporated within this Commonwealth, and the *real estate* belonging to such institutions, occupied by them or their officers, for the purposes for which they were incorporated." The distinction between that clause and the one now under consideration in our statute, as respects the exemption of

personal property in such cases, is too obvious to justify or
need comment.   In fact the right to exemption in each
case as it arises must depend upon the construction of the
particular statute under which it is claimed.   Controlled,
as we are, by the construction we have heretofore placed
upon this clause of our Act of Assembly, and applying, as
we must, the fundamental and universal rule that all
exemptions from taxation are to be strictly construed, we
are constrained to decide that the exemption in this case
extends only to the lots, buildings, and equipments as we
have defined them, and not to the stocks and other per-
sonal property, mentioned in the order appealed from.
That order must therefore be reversed, and the cause
remanded, to the end that an order may be passed by the
Baltinore City Court correcting this assessment in accord-
ance with the views expressed in this opinion.

*Order reversed, and*
*Cause remanded.*

(Decided 31st January, 1879.)

In the case of *"Rock Hill College"* it appears that the
appellee, a corporation created by the Act of 1865, ch. 10,
for charitable, literary and educational purposes, under
the direction of "The Brothers of the Christian Schools,"
and authorized to take and hold real and personal prop-
erty the income from which shall not exceed a certain sum,
is the owner of a lot of ground with the building thereon
erected, situated on Courtland Street, in the City of Balti-
more.   This lot and building, with the furniture therein,
have been assessed under the Act of 1876, and it is in-
sisted they are exempted from taxation by the same clause
of that statute to which reference has been so often made.
From the affidavit of the Rev. Thomas S. Lee, found in
the record in support of the appellee's petition, it is proved
that this building has been used since 1873 as a parochial

school-house for the gratuitous education of indigent boys. The facts stated in this affidavit, which need not be set out at length, make a case similar to that of *"St. Peter's Academy," "St. Alphonsus Hall"* and *"St. Lawrence's Church."* We have no difficulty in sustaining the claim to exemption. In fact the counsel for the appellant concede in their brief that this is a case covered by the exemption clause in question.

*Order affirmed.*

(Decided 31st January, 1879.)

The same thing is true as to the case of *"The Trustees of the Catholic Cathedral Church of Baltimore,"* a corporation created by the Acts of 1795, ch. 15 and 1820, ch. 84, wherein exemption is claimed for a lot and building thereon, located on Franklin Street. The affidavit of the same party, the Rev. Thomas S. Lee, shows that the building erected on this lot has been used by the appellees since 1872 as a parochial school-house, under the direction of the "School Sisters of Notre Dame," a religious society for the education of youth; that it yields no revenue or income, but is a source of yearly expense to the trustees; the poor and indigent girls of all ages, and boys up to ten years of age, are instructed at this school; that it is free to all children of this class, and no charge is made for their instruction and education, and is supported as a charity by money derived and contributed by private charitable individuals, and from the trustees out of the church funds, and from concerts held and given in its aid.

*Order affirmed.*

(Decided 31st January, 1879.)

We are constrained to arrive at a different result in the case in which the same appellees, *" The Trustees of the Catholic Cathedral Church of Baltimore,"* claim exemption

for the lot, building and furniture therein, located on Saratoga street, and called "Calvert Hall." The petition alleges in substance that the building covering this lot is used as a school-house for boys, in which a school is conducted by "The Brothers of the Christian Schools," a religious society for the instruction of male youth; that this school yields no revenue or income, but, on the contrary, is a source of yearly expense to the said trustees; that it is conducted by said Brothers, not for monetary profit, but for the education of male youth, *and should any revenue accrue to them from one school, it is fully expended by them in the conduct of other schools which are free, and under their charge,* and that said school is therefore exempt from taxation, under the second section of the Act of 1876, ch. 260; and that petititioners believe there will be other reasons shown at the hearing of this petition, why the claim for exemption should be allowed. Now conceding, (without so deciding,) that the *facts* averred in this petition would be sufficient, if established by affidavits or other proof, to sustain the exemption claimed, we find no proof in the record to support them. The only affidavit in support of the petition is that of Mr. Whelan, "that Calvert Hall is an *educational institution;*" but educational institutions as such, are not exempted by the Act of 1876. The answer of the Appeal Tax Court avers that this property, at the time it was valued and assessed under the Act of 1876, was subject to valuation and assessment, in the manner and form in which it was so valued and assessed, and each and every part thereof now remains, and is subject to valuation and assessment. The case was submitted to and heard and decided by the City Court upon this petition, the answer thereto, and this affidavit alone, which entirely fails to sustain the claim to exemption to any extent, and that Court passed an order, deciding that the whole of this property was not subject to taxation, and directing the

Appeal Tax Court to strike it from the list of property valued to the owner. Was this order correct, and if not, how is the case to be disposed of by this Court?

The 28th section of the Act of 1876, under which these proceedings were had, provides (so far as it is applicable to the present case,) that any owner to whom property has been valued, and who shall claim that it is exempted from taxation, may file his petition in the City Court, setting forth the grounds upon which the exemption is claimed, and to this petition the Appeal Tax Court shall be made defendants, and shall answer the same within ten days after they shall have actual notice thereof; and it shall be the duty of the said Court to hear the case upon petition and answer, *and* upon such affidavits, if any, as the Court may authorize to be taken by either party, and shall determine whether the property so valued is subject to valuation and assessment, and if it shall determine that it is not, it shall by its order direct the Appeal Tax Court to strike the same from the list of property valued to such owner, but if it shall determine that said property is subject to valuation and assessment, it shall so determine by its order. And by section 30 of the same Act, it is provided that either party to these proceedings, may appeal from the order of the Court therein, to the Court of Appeals, and that Court shall immediately hear and determine the *said case.* The mode of procedure which must be followed is thus specially provided by statute; and where a case is submitted upon petition and answer, and the latter does not admit the facts alleged in the former, but denies the claim to exemption, and avers that the property is subject to taxation, there is nothing left for the Court to do, but to apply the general rule, that where a cause is heard on bill and answer, the latter is to be considered as true in regard to all matters in it which are susceptible of proof by legitimate evidence, (*Warren vs. Twilley,* 10 *Md.,* 39,) or if in such case the

affidavits fail to sustain the averments of the petition, the latter must be dismissed. No power is given to this Court to *remand* the cause in order to allow *further evidence to be introduced,* and it is plain from the nature of the subject with which this law deals, and the provisions .it makes for a speedy hearing and determination of these tax cases, that the Legislature never contemplated the delay which would follow such remanding. Nor can we treat this answer as an *admission* of the facts alleged in the petition, and a denial of the *conclusion of law* resulting from such facts. Its averments are too pointed and specific to admit of that construction. There is no agreement in writing, nor was there any oral concession at bar, supplying this defect of proof. It is a case then in which the petitioners have seen fit to submit their claim without sufficient proof to support it, and this Court, under the power conferred by the Act of Assembly, must deal with the case as the parties have made it. The order appealed from must therefore be reversed, and the petition dismissed, so as to leave the valuation and assessment of the property to stand as made.

> *Order reversed, and*
> *petition dismissed.*

(Decided 31st January, 1879.)


In the case of "*The General Workingmen's Sick Relief Union of Baltimore,*" the property known as "Mechanics' Hall," on West Fayette street, consisting of a lot and building, with the "furniture, stock, &c., therein," was, by the order of the City Court, determined to be exempt. The petition, which is very brief, alleges that this property is exempted from taxation by the Act of 1876, "being a charitable and benevolent institution, maintained by charitable offerings, *either in whole or in great part,*" and the affidavit of the President of the corporation is simply

to the effect that the facts set forth in the petition are true as therein stated. The view most favorable to the appellee that can be taken of this affidavit, is that it sustains the claim to exemption as *to part* of this property, and therefore makes a case in which the doctrines announced in the case of *The Commissioners, &c. vs. Sisters of Charity of Saint Joseph,* must be applied. To that end the order appealed from will be reversed and the cause remanded.

*Order reversed, and*
*Cause remanded.*

(Decided 31st January, 1879.)

In the case of *"The Red Men's Hall of Baltimore,"* the order appealed from exempts a lot and building, with the furniture therein, located on Paca street. The petition avers that the two upper stories of the building and the furniture, are used for the benefit of the indigent and afflicted, for the relief of widows and protection of orphan children, but the first story is rented to other persons for purposes of trade, for which the appellee receives annually about $360 as rental; and this averment is supported by the affidavit of the Treasurer of the corporation. This is therefore plainly a case for the application of the principle of capitalization, and for that purpose the order will be reversed and the cause remanded.

*Order reversed, and*
*Cause remanded.*

(Decided 31st January, 1879.)

In the case of *"Zion Church of the City of Baltimore,"* the order exempts the vacant lots of ground in the front and rear of this church. The exemption is claimed, and was allowed under that clause of the second section of the Act of 1876, ch. 260, which exempts "grave-yards, cemeteries paying no dividends, and *burying-grounds* set apart

for the use of any family, or *belonging to* any church or congregation." From the affidavit of the President of the Vestry and Board of Trustees of this church, it appears that the church building is located nearly midway between Gay and Holliday streets, upon a lot fronting about one hundred and ten feet on each street, with a depth between them of about two hundred and seventy feet, and there is an entrance-way to the church from each street; that this *whole lot* was in 1771 and 1793 conveyed to trustees, by deeds from the original owners, *to be held forever* as a place of public worship, *and as a burying-place* for the use of the High German Lutheran inhabitants of Baltimore-town and their descendants; and the congregation worshiping in the church was afterwards incorporated under the general incorporation law; that the lot being thus dedicated for burial as well as church purposes, two of the early pastors of the church are buried in the lot beside the church, and their graves are now there marked by suitable engraved slabs erected upon brick walls; that it has never been, and could not lawfully have been within the contemplation of the trustees of the church to dispose of any part of this lot except for church and burial purposes, but on the contrary, it has been proposed that a plat of ground to the left of the Holliday street entrance should be dedicated for the burial of, and erection of a monument over, the remains of the present aged pastor of the church, upon his death.

In our opinion, the facts thus proved are sufficient to show that all of this lot, save what is covered by the church building and entrance-ways, is a *burying-ground belonging to a church or congregation* within the terms of the exemption. It belongs to the church, the deeds of conveyance devote it to burial purposes, and since then it has not been, and is not now used, if it lawfully could be, for any other object. There are, at least, two bodies that remain buried there, with graves appropriately marked,

and the fact that a part of the lot only is at this time actually occupied by graves, does not confine the exemption to the *spots* of ground so appropriated. The exemption clause contains no language to justify such a restricted interpretation, and the order appealed from will be affirmed.

*Order affirmed.*

(Decided 31st January, 1879.)